EXHIBIT 13

# SETTLEMENT AGREEMENT AND RELEASE

This SETTLEMENT AGREEMENT AND RELEASE (the "Agreement") is entered into effective November 11, 2016, by and among JBlanco Enterprises, Inc. ("JBE"), a Colorado corporation with offices at 4065 South Federal Blvd., Sheridan, Colorado, 80110, Great American Insurance Group ("GAIG"), an Ohio corporation with offices at 301 East Fourth Street, Cincinnati, Ohio 45202, and Barlovento, LLC, ("Barlovento") an Alabama limited liability company with offices at 431 Technology Drive, Dothan, Alabama 36303.

## RECITALS

WHEREAS on July 31, 2012, the United States Department of the Air Force ("Air Force") contracted with Barlovento for the replacement of the roof at the Consolidated Education Training Facility (the "CETF Project") located at the United States Air Force Academy in Colorado Springs, Colorado; and

WHEREAS on or about September 6, 2012, Barlovento and JBE entered into a Subcontract Agreement ("Subcontract"), Job No. 1204011-001, Cost Code 72002.000 under the terms of which JBE agreed to perform part of the work on the CETF Project for the benefit of Barlovento, and

WHEREAS pursuant to the Subcontract, JBE procured and GAIG issued Subcontract Performance Bond No. 2-11-61-50 (the "Performance Bond") in the penal sum of $549,271.25 to assure JBE's performance of the Subcontract, and

WHEREAS disputes have arisen concerning each party's respective rights and obligations under the Subcontract and Performance Bond, and

WHEREAS the parties' disputes are the subject of litigation in the case styled *JBlanco Enterprises, Inc. v. Soprema Roofing and Waterproofing, Inc., et al.*, Case No. 1:13-CV-02381-

SL (Lioi, J.)(the "Action") currently pending in the Eastern Division of the United States District Court for the Northern District of Ohio, and

WHEREAS the parties have agreed to settle their disputes on the terms set out below;

NOW, THEREFORE, in consideration of the mutual covenants set forth below, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

## TERMS AND CONDITIONS

1.  **Payment and Dismissal of Action:** Contemporaneous with execution of this Agreement, GAIG shall tender its check No. 910 703604 in the amount of $549,271.25 to counsel for Barlovento. Upon Barlovento's receipt of the payment of $549,271.25, each of the parties, through their counsel, shall execute and file a final Stipulation for Dismissal terminating their claims and defenses in the Action. In the event that Soprema's counsel declines to execute a Stipulation for Dismissal, the parties shall execute a Joint Motion to Dismiss.

2.  **Barlovento's Release of JBE and GAIG:** Upon receipt of all the payments set forth in Paragraph 1 above, Barlovento irrevocably releases, acquits and forever discharges JBE, GAIG, and their respective predecessors, successors, assigns, affiliates, subsidiaries, and parent corporations, and their present and former employees, officers, directors, shareholders, consultants, attorneys, representatives and agents from all actions, causes of action, complaints, liabilities, obligations, suits, damages, costs, expenses, rights, debts, dues, sums of money, accounts, reckonings, claims and/or demands of any nature whatsoever, in law and/or in equity, that Barlovento and each of its members, managers, predecessors, successors, assigns, affiliates, subsidiaries, and parent corporations ever had, now have or in the future may have, whether now known or hereafter discovered, direct or indirect, suspected or claimed, against JBE, GAIG, or

releasees identified above, to the extent the foregoing arise out of, are based upon, relate to, or are in connection with any of the acts, facts, circumstances, claims, transactions, events, occurrences, disclosures, statements, representations, omissions, or failures to act, or matters of any kind or nature whatsoever, related directly or indirectly to the CETF Project, the Performance Bond and/or the Action, <u>except</u> that nothing in this Settlement Agreement and Release shall be construed or operate to release any claims that Barlovento may have against Soprema Roofing and Waterproofing, Inc. or its affiliates.

3.  **JBE and GAIG's Release of Barlovento:** JBE and GAIG hereby irrevocably release, acquit and forever discharge Barlovento and its subcontractors, materialmen, suppliers, predecessors, successors, assigns, affiliates, subsidiaries, and parent corporations, and their present and former employees, officers, directors, shareholders, consultants, attorneys, representatives and agents from all actions, causes of action, complaints, liabilities, obligations, suits, damages, costs, expenses, rights, debts, dues, sums of money, accounts, reckonings, claims and/or demands of any nature whatsoever, in law and/or in equity, that either of them and their officers, directors, agents, employees, predecessors, successors, assigns, affiliates, subsidiaries, and parent corporations ever had, now have or in the future may have, whether now known or hereafter discovered, direct or indirect, suspected or claimed, against Barlovento, to the extent the foregoing arise out of, are based upon, relate to, or are in connection with any of the acts, facts, circumstances, claims, transactions, events, occurrences, disclosures, statements, representations, omissions, or failures to act, or matters of any kind or nature whatsoever, related directly or indirectly to the CETF Project, the Performance Bond and/or the Action <u>except</u> that nothing in this Settlement Agreement and Release shall be construed or operate to release any claims that JBE and/or GAIG may have

against Soprema Roofing and Waterproofing, Inc. or its affiliates, or any claims that JBE and GAIG may have against each other or their shareholders, officers, or affiliates.

4.   **No Admissions:** Neither the execution of this Agreement nor the tender of the consideration recited herein is intended or shall be understood as an acknowledgment of responsibility, admission of liability, or other expression reflecting upon the merits of any present dispute or claim, but rather evidences only a mutual intent and desire to resolve such disputed claims or disputed matters by compromise and settlement. While this Agreement resolves all issues between the Parties hereto, it does not constitute an adjudication of or finding on the merits and it is not and shall not be construed as an admission by either party of any breach of the Subcontract, Performance Bond, or any other basis for liability to the other.

5.   **Warranty of Authority:** The Parties represent and warrant that no other person or entity has or had any interest in the claims, demands, obligations or causes of action arising or resulting from the Action and that each Party has the sole right and exclusive authority to execute this Agreement, and has not sold, assigned, transferred, conveyed, or otherwise disposed of the claims, demands, obligations, or causes of action arising or resulting from the Action.

6.   **Jurisdiction, Venue, and Attorneys' Fees:** This Agreement shall be interpreted and enforced according to the laws of the State of Colorado and any action brought in any manner related to the interpretation, performance, or breach of this Agreement shall be brought in the federal or state courts of Colorado. In the event either party commences an action to enforce the terms of this Agreement, the prevailing party in such action shall be entitled to recover its reasonable attorneys' fees and costs.

7.   **Entire Agreement:** This Agreement reflects the entire agreement by and between the Parties relating to the matters at issue herein. No statement, promise or inducement made by

any of the Parties, or by their respective agents or representatives, which is not contained in this Agreement, shall be valid or binding.

8. **Modification:** This Agreement shall not be modified by any party by oral representation made before or after the execution of this Agreement. All modifications must be in writing and signed by all Parties.

9. **Construction:** The drafting of this Agreement is the product of mutual negotiation and agreement, with consideration by and participation of all parties and their respective counsel. Any presumption, whether statutory, common law or otherwise that ambiguities and uncertainties in a contract are interpreted against the party causing such ambiguity or uncertainty to exist, shall not apply to this Agreement and are hereby knowingly and voluntarily waived by all Parties.

10. **Full Understanding and Voluntary Acceptance:** The Parties acknowledge they are aware of their right to have this Agreement reviewed by an attorney or attorneys of their choice, and they have had a full and complete opportunity to do so. By executing this Agreement, the Parties represent they have relied upon the advice of their attorneys, who are attorneys of their own choice, the terms of this Agreement have been completely explained to them by their attorneys, and the terms herein are fully understood and voluntarily accepted.

11. **Counterparts:** This Agreement may be executed in multiple counterparts, each of which shall be deemed an original of this Agreement, and all of which together shall constitute one and the same Agreement to be effective, provided each and every party has executed and delivered, or caused to be delivered, to each other party at least one counterpart of this Agreement signed by that party.

12. **Facsimile Signatures:** A signed counterpart of this Agreement, which a party delivers by facsimile or scanned electronic copy, shall have the same effect as if the party had personally delivered a signed original of that counterpart.

**IN WITNESS WHEREOF,** each of the undersigned have executed this Agreement as of the date or dates appearing.

JBLANCO ENTERPRISES, INC.

By: _____ CEO _____
Its: _____ JBS _____

GREAT AMERICAN INSURANCE GROUP, INC.

By: _____
Its: _____

BARLOVENTO, LLC.

By: _____
Its: _____